UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| THERON BAILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:19-cv-00505-JRS-DLP |
| | ) |
| WEXFORD OF INDIANA, LLC, et al. | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

Plaintiff Theron Bailey brought this action alleging that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The defendants have raised failure to exhaust available administrative remedies as an affirmative defense and moved for summary judgment on that issue. Mr. Bailey concedes that he did not complete the grievance process, but he argues that the grievance process was not "available" because of internal delays in the grievance process and because prison officials denied his request for a Grievance Appeal form. For the reasons explained in more detail below, the defendants' motion for summary judgement is **GRANTED IN PART, AND DENIED IN PART**.

**I.
SUMMARY JUDGMENT STANDARD**

A motion for summary judgment asks the Court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a). A party must support any asserted disputed or undisputed fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party may also support a fact by showing that the materials cited by an adverse party do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce

admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609−10 (7th Cir. 2018). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II.
## BACKGROUND

### A. Offender Grievance Process

The Indiana Department of Correction ("IDOC") has a standardized offender grievance process. Dkt. 22-3. Upon an offender's entry into IDOC and when transferred to receiving facilities during incarceration, each offender is advised of the offender grievance process during offender admission and orientation. *Id.* at 7. The purpose of the grievance process is to provide offenders

committed to IDOC with a means of resolving concerns and complaints related to the conditions of their confinement. *Id.* at 1. Offenders may address complaints about medical or mental health treatment through the grievance process. *Id.* at 3.

Until April 1, 2020, the grievance process consisted of three steps: (1) submitting a formal grievance following unsuccessful attempts at informal resolutions; (2) submitting a written appeal to the facility Warden/designee; and (3) submitting a written appeal to the IDOC Grievance Manager. *Id.* at 3. Under the recently modified grievance process, offenders are no longer required to attempt informal resolutions before submitting a formal grievance. Dkt. 26-1, p. 3.

An offender who wishes to submit a grievance must submit a completed Offender Grievance form to the Offender Grievance Specialist no later than 10 business days from the date of the incident giving rise to the complaint or concern. Dkt. 22-3, p. 9. The Offender Grievance Form must be written legibly. *Id.* at 10. It shall also be signed, dated, and submitted by an offender on his own behalf, although it can be written by another offender or staff member if the offender is unable to do so due to a physical impairment, language impairment, or other obstacle. *Id.*

The Offender Grievance Specialist must either return an unacceptable form or provide a receipt for an accepted form within 10 business days. *Id.* If an offender does not receive either a receipt or a rejected form within 10 business days, the offender shall notify the Offender Grievance Specialist of that fact and the Offender Grievance Specialist shall investigate the matter and respond to the offender's notification within 10 business days. *Id.*

Upon receipt of the grievance response from the Offender Grievance Specialist, the offender shall be permitted to appeal the response to the facility Warden/designee. *Id.* at 12. To appeal to the facility Warden/designee, the offender shall submit a Grievance Appeal form within 5 business days after the date of the grievance response. *Id.* If the offender receives no grievance

response within 20 business days of the Offender Grievance Specialist's receipt of the grievance, the offender may appeal as though the grievance had been denied. *Id.* at 11. The Warden/designee's appeal response shall be completed within 10 business days of receipt of the appeal. *Id.*

If the offender wishes to appeal the Warden/designee's appeal response, the offender shall check "Disagree" on the appeal response and submit the completed Grievance Appeal form and any additional documentation to the Offender Grievance Specialist within 5 business days of the appeal response. *Id.*

An offender who does not follow the established time limits may have his grievance or appeal denied for failure to comply with the time frames unless they are able to show good cause. *Id.* at 13. If there are extenuating circumstances which caused the offender a delay in submitting the Offender Grievance form, the offender must document and submit the reason for the delay on a separate piece of paper with a signature and the appropriate appeal form or make a request for the specific form to the Offender Grievance Specialist for review. *Id.*

### B. Mr. Bailey's Participation in the Grievance Process

Mr. Bailey suffers from chronic pain as a result of a pinched sciatic nerve. Dkt. 1, p. 3. Until November 2017, he was prescribed Neurontin to manage this pain. *Id.* On November 8, 2017, the defendants allegedly discontinued this medication without a legitimate medical reason. *Id.* Mr. Bailey later developed neuropathy, resulting in additional pain, loss of balance, loss of motor function, and disturbances to his sensory nerves. *Id.*

On November 29, 2018, Mr. Bailey submitted an informal grievance complaining about the discontinuation of Neurontin and ongoing neurological symptoms. The informal grievance stated:

> I was taken off Neurontin 'cold turkey' and should have been tapered off this med. I am experiencing severe pain and numbness in my entire body. My hands and feet are ice cold constantly. I need to see a neurologist and have this issue addressed.

Dkt. 22-2, p. 18.

On December 19, 2018, Mr. Bailey filed a formal grievance complaining about the discontinuation of Neurontin. The formal grievance stated:

> On November 8, 2017, Barbara Riggs cut me off my medicine called: 'Neurontin,' and Ms. Riggs was instructed by Dr. Dennings to cut me off said above meds. I was cut off cold turkey, and as a result of them cutting me off my meds my entire body is num[b], my hands and feet hurts (sic). I can't write or type. I asked a guy to write this grievance for me.
>
> I would like to be examined to see what is going on with me and I need to get the appropriate meds that will cure my medical issue.

*Id.* at 17.

Mr. Bailey's formal grievance was rejected by Offender Grievance Specialist Thomas Wellington on December 20, 2018. *Id.* at 16. Mr. Wellington checked a box on the rejection form that states, "You have submitted the form too late and have not shown any good reason for the delay." *Id.*

Mr. Bailey did not submit a grievance appeal to the Warden/designee or to the IDOC Grievance Manager. Dkt. 22-1, para. 23; dkt. 22-4; dkt. 25, pp. 24-25.

The parties dispute whether Mr. Bailey attempted to submit a grievance appeal. The defendants have submitted a sworn affidavit from Mr. Wellington, which states, "Based on my review of Mr. Bailey's grievance records, he wrote me a letter complaining that his grievance was not late. Mr. Bailey received a response further explaining to him that his grievance was filed too late." Mr. Bailey has submitted his own sworn affidavit, which states, "I wrote to Thomas Wellington and requested an appeal form. I explained that I wanted to go to the next step because

5

they had exceeded their timeframes to respond to my informal grievance and my request for a formal grievance . . . I did not receive a response." Dkt. 25-1, pp. 8-9.

Neither side has presented documentary evidence of Mr. Bailey's letter to Mr. Wellington. The defendants have submitted a letter to Mr. Bailey from Deputy Warden T. Littlejohn dated January 3, 2019, informing Mr. Bailey that he waited too long to grieve this issue. Dkt. 22-2, p. 25. Deputy Warden Littlejohn's letter does not reference a Grievance Appeal form. *Id.*

Mr. Bailey has submitted affidavits from other inmates at his facility that describe their own difficulties completing the grievance process. *Id.* at 26-35. These affidavits echo many of the statements Mr. Bailey makes in his own affidavit—the grievance process is difficult to understand, internal delays make it difficult to meet deadlines, prison staff do not help inmates navigate the grievance process. *Id.* These inmates do not state that they were denied Grievance Appeal forms from their Offender Grievance Specialist, or that Grievance Appeal forms are routinely denied when a formal grievance is rejected as untimely. *Id.*

### III.
### DISCUSSION

**A.  Exhaustion Standard**

The substantive law applicable to this motion for summary judgment is the PLRA, which provides, "No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; *see Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v.*

6

*Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted). The Supreme Court has held that "A centerpiece of the PLRA's effort to reduce the quantity . . . of prisoner suits is an invigorated exhaustion provision." *Id.* at 84.

Exhaustion of available administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90. Proper use of the facility's grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Exhaustion is an affirmative defense, and the defendants in this case bear the burden of demonstrating that Mr. Bailey failed to exhaust all available administrative remedies before filing this suit. *Kaba v. Stepp*, 458 F.3d 678, 680-81 (7th Cir. 2006).

"If administrative remedies are not 'available' to an inmate, then an inmate cannot be required to exhaust." *Id.* at 684; *see also King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015) ("Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about."). Administrative remedies are primarily "unavailable" to prisoners where "affirmative misconduct" prevents prisoners from pursuing administrative remedies. *Dole*, 438 F.3d at 809 (remedies unavailable where prison officials "do not respond to a properly filed grievance"); *see also Thomas v. Reese*, 787 F.3d 845, 847–48 (7th Cir.2015) (remedies unavailable where correctional officer tells prisoner that prisoner cannot file grievance when in fact prisoner can do so); *Kaba*, 458 F.3d at 680, 686 (remedies unavailable where prisoner presents evidence that prison personnel have "denied [prisoner] grievance forms, threatened him, and solicited other inmates to attack him in retaliation for filing grievances"); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir.2004) (remedies unavailable where prison personnel prevent prisoner access

7

to grievance forms). However, "unavailability" extends beyond "affirmative misconduct" to include omissions by prison personnel, particularly failing to inform the prisoner of the grievance process. *See King*, 781 F.3d at 895–96.

### B. Exhaustion of Remedies in this Case

The defendants argue that Mr. Bailey failed to timely and fully complete the grievance process. Specifically, they argue that his formal grievance was not timely. Dkt. 26, para. 14, and that Mr. Bailey failed to submit a grievance appeal to the Warden/designee or the IDOC Grievance Manager. Dkt. 21, p. 9.

The Court will address each of these arguments separately.

#### 1. Formal Grievance

Mr. Bailey's grievances raise two related but separate concerns. First, he complained that he was taken off Neurontin "cold turkey," which caused him to develop symptoms such as pain and numbness. Dkt 22-2, pp. 17, 18. Second, he complained that he was not receiving adequate treatment for ongoing neurological symptoms. *Id.* He specifically asked for an examination, a referral to a neurologist, and medication. *Id.*

Mr. Bailey's Neurontin prescription was discontinued more than a year before he filed his formal grievance. The grievance process requires inmates to submit a formal grievance within 10 days of the grieved incident. Dkt. 22-3, p. 9. Mr. Bailey's argument that he wanted to attempt to resolve this issue informally is unpersuasive. The grievance process permits only a 10-day period to attempt to resolve grievances informally before the deadline to file a formal grievance expires. *Id.* Internal delays in processing informal grievances do not excuse Mr. Bailey's failure to meet this deadline by more than a year. Accordingly, Mr. Bailey's claim that his Eighth Amendment rights were violated when he was abruptly removed from Neurontin may not proceed.

Unlike the discontinuation of Neurontin, the defendants' alleged failure to treat Mr. Bailey's ongoing neurological symptoms cannot be time-stamped to a specific date. His formal grievance complained the he was presently being denied adequate treatment. Because Mr. Bailey formal grievance described an ongoing concern, it was timely filed in this respect.

### 2. Grievance Appeals

Mr. Bailey did not submit an administrative appeal to the Warden/designee or the IDOC Grievance manager. The defendants argue that this amounts to a failure to exhaust available administrative remedies. In response, Mr. Bailey argues that the grievance appeals process was not "available" because prison officials denied his request for a Grievance Appeal form. He has submitted a sworn affidavit that states he requested a Grievance Appeal form from Mr. Wellington after his formal grievance was rejected as untimely, and that Mr. Wellington did not respond. Dkt. 25-1, pp. 24-25.

In reply, the defendants argue that Mr. Bailey "provides no evidence that he actually requested an appeal form." Dkt. 26, para. 12. This statement is plainly false. Mr. Bailey presented a sworn affidavit establishing this fact for purposes of summary judgment. *See* dkt. 25-1, pp. 24-25. Under Rule 56(c)(1)(A), "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including . . . affidavits or declarations." A plaintiff's own self-serving affidavit or testimony may defeat a motion for summary judgment if it creates a genuine dispute of material fact. *See Kaba*, 458 F.3d at 681 (Mere fact that plaintiff's affidavit is "self-serving" does not permit district judge to denigrate it when deciding whether material dispute requires trial, precluding summary judgment.); *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("For summary judgment purposes, deposition

9

testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving.").

The defendants have not met their burden of proving that the grievance appeals process was "available" to Mr. Bailey. There is evidence in the record that Mr. Bailey requested, but did not receive, a Grievance Appeal form from Mr. Wellington. There is no evidence that Mr. Bailey could have obtained a Grievance Appeal form by other means. Mr. Wellington's affidavit acknowledges that he received a letter from Mr. Bailey after rejecting his formal grievance, but that affidavit is silent regarding whether Mr. Bailey requested a Grievance Appeal form. *See* dkt. 22-1. Accordingly, Mr. Bailey's claim that he was denied ongoing treatment for neuropathy will not be dismissed at this time.

## IV.
## CONCLUSION

For the reasons explained above, the defendants' motion for summary judgment, dkt. [20], is **GRANTED IN PART AND DENIED IN PART**. Mr. Bailey did not submit a timely formal grievance about the abrupt discontinuation of his Neurontin, and that claim may not proceed. His other claim, that he suffered an ongoing lack of treatment for neuropathy, will not be dismissed at this time.

The record before the Court shows that Mr. Bailey is entitled to summary judgment on the defendants' affirmative defense of exhaustion, as it relates to his claim about an ongoing lack of medical treatment for neuropathy. Pursuant to Rule 56(f)(1), the Court gives the defendants notice of its intent to grant summary judgment in Mr. Bailey's favor on this issue. The defendants have until **November 6, 2020**, to respond to the Court's proposal. Alternatively, defendants may withdraw their affirmative defense as it relates to this claim by that date.

**SO ORDERED**.

Date:   10/16/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

THERON BAILEY
981655
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Angela Marie Rinehart
KATZ  KORIN CUNNINGHAM, P.C.
arinehart@kkclegal.com